**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ELSIE E. DOMINGUEZ,** **Plaintiff,** | **CIVIL ACTION NUMBER: 23-cv-22724** |
| **v.** | |
| **UNITED STATES OF AMERICA,** **Defendant.** | **MOTION HEARING** |

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101
June 4, 2024
Commencing at 10:05 a.m.

**B E F O R E:** **THE HONORABLE EDWARD S. KIEL, UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**

SANFORD HEISLER SHARP, LLP
BY: SHANNON HENRIS, ESQUIRE
BY: CHRISTINE DUNN, ESQUIRE
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
For the Plaintiff

SANFORD HEISLER SHARP, LLP
BY: ANDREW MACURDY, ESQUIRE
17 State Street, Suite 3700
New York, New York 10004
For the Plaintiff

Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
AnnMarie_Mitchell@njd.uscourts.gov
(856) 576-7018

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

**A P P E A R A N C E S (Continued:**

DEPARTMENT OF JUSTICE - UNITED STATES ATTORNEY'S OFFICE
CIVIL DIVISION
BY: JOHN T. STINSON, JR., ESQUIRE
401 Market Street, 4th Floor
Camden, New Jersey 08101
For the Defendant

DEPARTMENT OF JUSTICE
BY: JAMES R. WHITMAN, ESQUIRE
PO Box 7146
Washington, DC 20044
For the Defendant

**A L S O P R E S E N T:**

GLADYS NOVOA, Courtroom Deputy

\- - -

(PROCEEDINGS held in open court before The Honorable EDWARD S. KIEL at 10:05 a.m.)

THE COURT: Good morning, everyone. Please be seated.

All right. Good morning. We're on the record in the matter of Dominguez v. United States of America. It's case 23-cv-22724.

First, if I can have the appearance on behalf of plaintiff, please.

MS. HENRIS: Your Honor, my name is Shannon Henris. I'm here with my colleagues Christine Dunn and Andrew Macurdy on behalf of Ms. Dominguez.

THE COURT: Very good. How about on behalf of the United States?

MR. STINSON: Your Honor, John Stinson from the Civil Division of the US Attorney's Office.

And I'll have my colleague introduce himself.

MR. WHITMAN: Jim Whitman with the US Department of Justice, Civil Division.

THE COURT: You took the Acela up today?

MR. WHITMAN: Yes, I did. Not the Acela; the Northeast Regional.

THE COURT: Cheaper. Cheaper but a little slower.

Well, welcome, everybody.

So I read all the papers. And plaintiff's counsel

asked for oral argument, which I will always grant if somebody wants oral argument. And plaintiff's counsel said that this is somewhat of a special circumstance and wanted to have oral argument, and we're here for that.

But let me throw something out at you all, and it's a question that I've been grappling with a little bit. And it stems from a recent case called *KP.* I don't know if anybody has seen that case. It's a case from the Employees' Compensation Appeals Board, February 27, 2024. It's Docket Number 24-0065. It's a Westlaw cite, 2004 WL 1571812. And as I said, it's a decision that was issued relatively recently, February 27th, after the first brief was filed. It is before the opposition was filed. But it was just a few weeks before, and obviously before the reply was filed.

And basically in that case, there was an employee with the Department of Health and Human Services Center for Disease Control that was in Nairobi, Kenya, and she had gone out to a festival. And at the festival she was assaulted. And she made a claim under FECA.

Is it FECA? Is that the way you pronounce it? FECA.

Under FECA. And the appeals board said that her claim didn't fall within FECA because she was permanently assigned to Kenya. It's not clear to me from the -- from the opinion how long she was in Kenya.

And then we did some further research to see whether

there is any kind of case law about when a civilian mariner on a United States ship is there for an extended period of time, whether that's considered a temporary assignment where the travel status applies and FECA, the protection of FECA applies 24 hours a day, as opposed to it's a permanent assignment.

Now, the plaintiff in this case was on the ship for I believe two years. And we didn't find any case law on it. And so I wanted to start with that issue.

And start with plaintiff, first of all, whether you've seen that case and whether you know of any case law which says that there is some distinction between a civilian mariner on a US ship that is there for a very long period of time, in this case two years, as opposed to someone who is temporarily on a ship and is not covered by FECA 24 hours a day.

Anybody from plaintiff want to address that?

MS. HENRIS: Sure. So, Your Honor -- I'm sorry.

Hi, Your Honor, my name is Shannon Henris.

THE COURT: Yes.

MS. HENRIS: So I have not seen that case, but Ms. Dominguez was assigned indefinitely to the USNS Carson City. She didn't have an end date in December 2021. There was only a minimum. And at that time she was going to be assigned there permanently. She was ultimately there for two years.

THE COURT: Is someone who is a civilian mariner on a US vessel designated as being permanently assigned, or is that something that's done internally? How does that work, do you know?

MS. HENRIS: So in her situation, she was essentially permanently assigned. So when she signed on, she had a four-month minimum to her contract. There was no end date. And many civilian mariners stay on for a very long time. So she happened to stay on for two years but could have stayed on longer and was permanently assigned to that ship.

THE COURT: Okay. Does that change the analysis at all? And I know you haven't had the benefit of looking at the case. Does that change the analysis? Because what the analysis comes down to, what I see is whether there's a substantial question or not. Right? And whether she is permanently assigned and whether that status takes her out of FECA if the Department of Labor comes back with a different opinion and they have some reasonable basis for it. It's still a substantial question, wouldn't it be?

MS. HENRIS: So, Your Honor, there isn't a substantial question of FECA coverage in this case because -- well, there are a number of reasons. But on the issue of travel status, Ms. Dominguez was permanently assigned to the ship. She was not in some abhorrent or unusual travel or special mission status when this happened. She was

permanently assigned there.

THE COURT: Yes. But the DOL's advisory opinion says that she was on travel status. They made that determination as far as an advisory opinion already.

MS. HENRIS: So the DOL opinion, it misstates and misinterprets the allegations in the complaint in a couple of ways, one of which is that travel status allegation. It also claims that even if -- that if Ms. Dominguez was on travel status for 24 hours -- or, sorry, was on travel status, then FECA would apply on a 24/7 basis, but there are exceptions to that rule, when employees are on personal time, for example, going to bars or nightclubs. Ms. Dominguez was off the ship and had gone to a bar when she was drugged and rendered unconscious and then returned to the ship.

THE COURT: But the rape happened on the ship. Right?

MS. HENRIS: That's correct.

THE COURT: In her statement. Right? So that's where she was assigned and that's where she slept based upon her duty as a civilian mariner.

MS. HENRIS: So, Your Honor, but what happened in this case is she had left the ship, she was drugged and became essentially unconscious. Her co-workers had to physically drag her back on the ship. And it can't be the case that if they'd left her on the gangway or somewhere else she would

have not been engaged in the performance of her duties, but because they deposited her in her stateroom, she was again engaged in the performance of her duties. She was off duty and unconscious when this happened.

THE COURT: And I understand that that's your point and the position that you're taking, but whether there's a substantial question or not, you're saying that there's absolutely no way that FECA applies. And the analysis done by the Department of Labor in their advisory opinion is totally incorrect and is -- basically I have to find it's frivolous and without any basis. Right?

MS. HENRIS: So, Your Honor, the Department of Labor memorandum, it misstates the facts in two ways. One is this travel status. It analogizes Ms. Dominguez's case as if she were traveling away from her employer's premises when actually she was permanently assigned to the ship.

The other way is that it ignores the fact that the captain and Ms. Dominguez had a pre-existing personal relationship that actually caused the assault. It says that she was apparently assaulted for reasons related to employment, but that goes against the allegations in the complaint.

THE COURT: But aren't these arguments that you should bring to the Department of Labor first and have the Department of Labor and the secretary to determine that she's

not subject to FECA?

MS. HENRIS: So, Your Honor --

THE COURT: And then you come right back here. Right?

MS. HENRIS: So, Your Honor, if this went to the Department of Labor, they would make a determination. But it doesn't need to go to the Department of Labor. The Court is empowered to determine that there's no substantial question of FECA coverage. One case in the papers where this happened was *Ritchie v. United States*. We cite that in the opposition brief, pages 7 to 8, where it said -- the Court said that because the Court concluded the plaintiff was not in the performance of their duty, they don't need to defer to the Secretary of Labor.

THE COURT: Let me hear from the defendant's counsel, Mr. Whitman, would it be?

MR. WHITMAN: Yes.

THE COURT: Let me start with that question of travel status and who determines that and in this case whether plaintiff was designated as being permanently assigned as opposed to travel status.

Would you agree with me that if she was designated as being permanently assigned to the USNS Carson City, doesn't that change the analysis?

MR. WHITMAN: I don't think it does, Your Honor.

THE COURT: Okay. Tell me why.

MR. WHITMAN: And I will say that I'm also not familiar with the decision that Your Honor mentioned at the outset that came out recently.

THE COURT: But I think there is a distinction between permanently assigned and being temporarily assigned, because the travel status itself is what gives you the 24-hour coverage under FECA.

MR. WHITMAN: Well, as I understand from Your Honor's description of that case, the assault in that case occurred while the employee was at some sort of festival that was not at her, you know, government residence.

THE COURT: It wasn't sponsored by the employer.

MR. WHITMAN: I'm sorry?

THE COURT: It wasn't sponsored by her employer.

Let me give you another key fact of that decision by the board.

They said that she was permanently assigned to the station in Nairobi, Kenya, and that in order to leave that station, she had to get permission from her employer. Right? I think that's a distinguishing fact as well.

MR. WHITMAN: Well, I think in terms of whether or not the FECA applies here, assuming we're going to get into the weeds about whether or not FECA applies here -- and I'll get to that point in a minute to follow up on Your Honor's

comments about who should be deciding this question. But if we're going to talk about the merits, I ultimately don't think it matters whether or not the plaintiff in this case was permanently assigned to the ship or whether she was temporarily assigned to the ship, because the fact remains that the alleged rape occurred while she was on board a government vessel that she was assigned to and where she was required to sleep as part of her federal employee duties.

And so to get back to opposing counsel's comment about, it shouldn't make a difference whether or not the alleged rape occurred on the ship or off the ship, that is in fact the line that the Department of Labor has drawn. And we've cited some cases in our reply brief pointing out the fact that if a sexual assault were to occur at a location -- for a traveling employee at a location other than the hotel where they are sleeping at, that is not covered by FECA. But if a sexual assault occurs at the hotel where they are staying for their temporary duty station, that would be covered by FECA.

THE COURT: Oh, I thought it was a covered position, like in *SK*. That's the case you're talking about?

MR. WHITMAN: Correct.

THE COURT: In *SK*, it was my understanding that the 24-hour FECA coverage applies to 24 hours no matter what that employee is doing, whether she's on the hotel site or off the

hotel site, she's covered 24 hours because she's on travel status.

MR. WHITMAN: I don't think that's exactly correct, because, again, referring to that other -- there are two *SK* cases. Referring to the other *SK* case --

THE COURT: The *SK* case which she was on a three-day conference.

Is this the one that you're talking about?

MR. WHITMAN: There are two of them.

THE COURT: Okay.

MR. WHITMAN: And they both involve sexual assaults. So, unfortunately, it's sort of complicated.

There's one where the employee was on a three-day travel status, and she was at the hotel bar of the hotel where she was staying at to attend a work-related conference. And an individual followed her to that hotel room and allegedly raped her. In that case Department of Labor found that she was covered by FECA because it happened at the hotel where she was staying at as part of her temporary duty station.

There's another *SK* case where the federal employee was traveling, was staying at one hotel but then went to either another bar or another hotel, the facts are not entirely clear, but another bar or another hotel where she met up with a gentleman, went to that gentleman's hotel room, a totally different hotel, and even though she was on travel

status at the time, the Department of Labor said that is not covered by FECA because she was not -- the assault did not occur at the hotel where she was staying at as part of her travel status. So --

THE COURT: Were both *SK* cases cited in your brief?

MR. WHITMAN: They are.

THE COURT: Because I looked at the one that came first, I guess.

MR. WHITMAN: Yeah, they are both cited.

THE COURT: Okay.

MR. WHITMAN: I will also point out, and this is I don't think really all that important, but I will say that although I'm not -- I haven't asked my agency counsel about this, I would say that the plaintiff in this case was not permanently assigned to the ship in the same sense that an employee might be permanently assigned to a duty station overseas.

THE COURT: Yes. And I wanted to get into --

MR. WHITMAN: This is not like her --

(Court reporter clarification.)

MR. WHITMAN: My apologies, Your Honor.

THE COURT: No, no. And I apologize for interrupting.

What I was thinking in the same vein, when she is on the vessel and it's in Italy, obviously that's where she

sleeps, but when it comes to port, whatever the home port is, do you know whether she continues to stay on the vessel or does she go off the vessel? Do you know what the facts of that are?

MR. WHITMAN: That I do not know. I do not know.

THE COURT: Does plaintiff know of that at all? No? Okay. That's fine.

Go ahead.

MR. WHITMAN: I just was going to say -- and I think this conversation about the merits of whether or not she was permanent versus term or whether the FECA applies to somebody who's on travel status, all of this I think just goes to our broader point, that this really is a decision that the Department of Labor should be making in the first instance. Congress has decided that this sort of situation is one that the Department of Labor is vested in deciding and the courts do not have subject matter jurisdiction to entertain this sort of claim at least until the Department of Labor has definitively said this is not covered by FECA, at which point, as Your Honor pointed out, she can come back to court and the case can proceed.

THE COURT: Yes. So the substantial question threshold applies to also whether she's on travel status, whether she's permanently assigned, and all of those answer issues as well.

MR. WHITMAN: Correct, Your Honor.

THE COURT: What happens if she decides -- well, what happens if I decided that there is a substantial question and I put a stay on, and she says, I'm not going to go to the Department of Labor, what happens then?

MR. WHITMAN: In that case, Your Honor, we would -- if we needed to file a separate motion, we would, but we would suggest that the case at that point should be dismissed.

THE COURT: Based upon a lack of jurisdiction?

MR. WHITMAN: Correct, Your Honor.

THE COURT: Is that the same with plaintiff, if I would rule that there's a stay and the question of whether FECA applies should go to the Department of Labor initially, and the plaintiff says I'm not going to go to the Department of Labor, what happens then?

MS. HENRIS: I mean --

THE COURT: And I presume that the defendant would then move to dismiss the case upon lack of jurisdiction.

Do you think that's the proper procedure then?

MS. HENRIS: We expect that's what would happen, yes, Your Honor.

THE COURT: I'm sorry?

MS. HENRIS: We expect that's what would happen at that instance, yes, Your Honor.

THE COURT: All right. So I'll throw it over to

plaintiff.

Do you want to add anything further?

MS. HENRIS: Yes, Your Honor. I'd like to address the point about the location of the assault and the significance of that.

While the location of the assault being on the ship is -- it's a relevant factor, it's not dispositive. And there are cases we cited in our papers that can be analogized to the situation. *Ritchie v. United States* is one where an employee was drugged on federal property during work hours by the federal government, and the court found the plaintiff could not have contemplated the alleged injury when they accepted federal employment and that finding that that sort of injury occurred within the performance of their duties would stretch the zone of danger past its limits.

Similarly in this situation, Ms. Dominguez suffered a horrific injury that was not related to the performance of her duties. And as the government stated in their reply brief, being a victim of sexual assault is absolutely and unequivocally not part of a mariner's job duties on a US Navy ship.

THE COURT: It absolutely is not, and I think everybody agrees with that, but the question becomes, is there a substantial question as to whether FECA applies.

And I think that it is relevant where the assault

happens. That's where she was assigned -- the vessel that she was assigned at where she was, and she was in the stateroom because she was assigned to that vessel.

MS. HENRIS: So, Your Honor, it is relevant, but there are other factors to be considered. One is this was not a time when it could reasonably be said that Ms. Dominguez was engaged in her masters business. She was off duty and unconscious when the captain assaulted her.

Additionally, this is not a risk associated with her employment. She was attacked by somebody with whom she had a personal relationship, which is not a risk specific to the job of a civilian mariner.

THE COURT: Yes, but those are all the factual factors that have to be considered by the Department of Labor in the first instance. Unless I find that their position is totally frivolous and without basis, then I have to give it to the Department of Labor to make the decision in the first instance.

Wouldn't you agree with that? That's what the case law says.

MS. HENRIS: Your Honor, well, there are a number of cases where the court has made that decision in the first instance and found that there is not a substantial question of FECA coverage. And that could be based off of decisions by the Employees' Compensation Appeals Board and the Department

of Labor which we've cited here, that the Court is empowered to make that decision.

THE COURT: Well, the cases that I've seen, and I certainly have read all the cases that you cited as well, but there seems to be a substantial question as to whether FECA applies in this case. I've gotten a memo or an advisory opinion. And other courts have looked at that advisory -- have looked at Department of Labor advisory opinions, and I remember Judge Martini was one of them that talked about that. I forget which case it was. But he said -- and the Third Circuit itself has said that advisory opinions can be looked at as part of the consideration.

You don't dispute that, that the advisory opinion is something that I need to consider in determining whether there's a substantial question of FECA coverage or not. Right?

MS. HENRIS: So there are a few issues with the Department of Labor memorandum here. I've mentioned the factual --

THE COURT: I know you said that there's some factual issues.

MS. HENRIS: Right.

THE COURT: But this is a memo or an advisory opinion that they drafted. I can't just ignore it.

MS. HENRIS: Well, a few things I'll say on that

point.

One, again, in the *Ritchie* court, the court struck a memorandum that it found was a self-serving document prepared for litigation from the Department of Labor. So it's permissible to do that in that instance.

I'll also direct to a case that the defendant cited, which is *Fort v. United States*, that's reply brief at 5, where a Department of Labor memorandum was considered but it was found to be neither binding nor dispositive. So it's --

THE COURT: It's not binding or dispositive. Obviously if the Department of Labor goes back and gets the issue and decides that that was not the right decision, then it comes back here to the district court. Right?

MS. HENRIS: So, Your Honor, that is what would happen. But there isn't a substantial question of FECA coverage based on these specific facts. So sending it to the Department of Labor to get that determination to come back, it just delays Ms. Dominguez's access.

THE COURT: Yes, we don't have anything on these specific facts, but, yes, it's a heavy burden to get over. Right? It's a heavy burden when the standard the Third Circuit and the Supreme Court has set forth is whether there's a substantial question of coverage or not.

And I think that the opposite view of it is that they say there has to be a certainty that there's no coverage.

Right? That's a heavy burden to overcome.

MS. HENRIS: Your Honor, definitely there are situations that are on the line where there are -- based on those facts, it is a heavier burden. There is more question as to whether this is a workers' compensation issue. But this is a situation where Ms. Dominguez was raped in her bed while she was off duty and unconscious. She was not engaged in the performance of her duties when that happened. Again, she was off duty, unconscious. The captain had a personal relationship with her. And in the Department of Labor memorandum they cite guidance that a personally motivated assault is not covered by FECA, but, again, because the memorandum states that she was apparently assaulted out of a work dispute or for work-related reasons, they applied that guidance incorrectly.

THE COURT: Okay. Anything further for the government?

MR. WHITMAN: No, Your Honor.

THE COURT: All right. Obviously it's a difficult case, and I appreciate counsel's good work in providing me all of the information. And as I said, we did some independent research and I've looked at everything, and I'm ready to render a decision.

Here plaintiff was employed as a civilian employee by the US Navy's Military Sealift Command and served as a

civilian mariner on the USNS Carson City, ECF Number 1, paragraph 9.

On November 14, 2014, she was assigned as a third assistant engineer for her first MSC assignment aboard the USNS Spearhead, where she first met the accused rapist, *Id.* at page 15.

On October 15, 2021, plaintiff joined the USNS Carson City as a first assistant engineer for MSC in Spain, *Id.* at paragraph 17. The alleged rapist at the time was serving as the Captain as the Master of the vessel, *Id.*

On December 18, 2021, while the vessel was docked in Italy, plaintiff and her chief engineer went ashore to a bar. Soon after, the captain and the first mate arrived at the bar, *Id.* at paragraphs 25 to 27. Someone ordered a round of shots to the group. And that is plaintiff's last recollection of that night until she woke up to find the Captain raping her in her stateroom, *Id.* at paragraph 28 to 33.

Plaintiff filed the complaint on November 29, 2023, asserting claims under the Jones Act and asserting unseaworthiness under general maritime law, *Id.* at pages 25 to 30.

On February 13, 2024, the United States filed a motion to stay or in the alternative to transfer this matter to the Eastern District of Virginia, ECF Number 16. The United States argues that the Federal Employees' Compensation

Act precludes the Court from asserting jurisdiction over this matter until and unless the Secretary of the Department determines that FECA does not cover plaintiff's claims.

Plaintiff argues in opposition that her claims asserted against the United States stemming from the rape is not covered by FECA because the rape did not occur in the performance of her duties, ECF Number 17.

And plaintiff argues "the central question" presented is whether FECA is applicable to these facts, ECF Number 17, page 9.

This to me is not the central question for today. Rather, based upon case law interpreting and applying FECA, the central question is whether there is a substantial question of whether the FECA covers plaintiff's claim.

Whether FECA is applicable to any claim is generally not the province of a court. Rather, unless I am certain there is no coverage, the determination of whether there is FECA coverage must in the first instance be made by the Secretary of Labor, *DiPippa v. United States*, 687 F.2d 15, 16 (Third Circuit 1982).

The Third Circuit has characterized FECA's bar on personal injury suits as jurisdictional, *Spade v. United States*, 763 F. App'x 294, 295 (Third Circuit 2019).

Here the Department of Labor has already issued an advisory opinion on whether plaintiff's claims would be

covered by FECA, and the Department of Labor concluded there is a substantial likelihood that the plaintiff's claims would be covered, ECF Number 16-6, pages 3 to 5.

Given my review of the case law and the Department of Labor's advisory opinion, I cannot conclude at this time that there is a certainty that there is no coverage.

There is the *SK* case that we've been talking about a little bit today that was before the Employees' Compensation Appeals Board, 2012 WL 5513626, July 22, 2020, where the Board determined that an employee's claim stemming from an alleged rape in a hotel room while the victim was traveling for a work-related conference was covered by FECA. There the alleged rapist was someone who was not attending the same conference that the claimant was attending. Despite these facts, the ECAB determined that plaintiff's injuries resulted from activities incident to the employee's duties.

The reasoning in *SK* appears to me to be on point and to the circumstances of this case. Although the victim in *SK* was in a hotel room and plaintiff was in a stateroom aboard a vessel, the analysis would appear to be the same. *SK* was staying in the hotel room as a result of her work-related travel. Plaintiff here was in her stateroom because of her duties on board the vessel. In other words, she was sleeping in the location for reasons related to the employment.

And although not cited by the parties, we had some

discussion about the *KP* case. And I know that counsel are a little bit handicapped because it was a recent case and they had not seen it. But it is another case from the Employees' Compensation Appeals Board at 2024 WL 157812, February 27, 2024.

In that case KP alleged that she was assaulted while exiting a festival in Kenya. At the time she was on permanent deployment to Kenya through the Department of Health and Human Services in Nairobi, Kenya. In finding that FECA did not apply to her claim, the ECAB differentiated her position from someone on temporary assignment who would be under the protection of FECA 24 hours a day when an employee is on travel status. The claim was denied because KP was not on travel status because she was on permanent assignment to Kenya.

Now, plaintiff may disagree that she is under the protection of FECA for 24 hours a day while traveling on duty in the vessel. And while I appreciate plaintiff's argument that being raped is not incident to her work duties, there is not insubstantial case law indicating that the position taken by the government that FECA applies is neither without any basis nor frivolous. And while the Department of Labor's advisory opinion is just that, advisory, a court may look to such an advisory opinion to determine whether there's a substantial question of coverage exists, see *Fort v. United*

*States*, Case Number 22-583, 2024 WL 228935 at page 12, (DNJ March 9, 2020). I believe that was Judge Martini's case.

Our research did not reveal any case that further defines when and if a civilian mariner on a United States vessel can be considered on temporary travel status or on permanent assignment. Here, plaintiff was assigned to the USNS Carson City from October 2021 to October 2023, two years. However, when her time on board the vessel or the time that the vessel was not in the United States -- I'm sorry, however, whether her time on board the vessel or the time that the vessel was not in the United States can be characterized as temporary travel status or permanent status I believe must be first determined by the Department of Labor under the mandatory provisions of FECA and the case law requiring any substantial question of FECA's applicability to be determined by the Secretary of Labor.

So, additionally, a stay of an action rather than dismissal for lack of jurisdiction is a commonly used tool to ensure that the Secretary is given sufficient time to make a determination of coverage where there's a substantial question of coverage and to protect the claim from the potential bar of the statute of limitations if coverage is denied and the matter is to be litigated before this court. See *DeGironimo v. United States*, Case Number 18-14594, 2020 WL 13561291 (DNJ March 6, 2020) and also *Spade*, 763 F. App'x at 295.

Based upon these reasons, I will administratively terminate this matter and stay further proceedings in this case. The administrative termination is not a dismissal of the case on the merits but merely an internal docket control procedure to place the matter on the inactive list while the matter is stayed. And the reinstatement of this matter, if it is necessary, will not be considered a new matter for statute of limitations purposes.

So an appropriate order will be entered.

How long typically does an application stay with the Department of Labor before an issue is rendered? I know that's a very difficult question, but is that something that we have to wait years for?

MR. WHITMAN: Your Honor, I don't know the answer to that. I would -- I can certainly ask agency counsel, and I'm happy to provide, you know, a notice or something to the -- you know, a letter brief to the Court if you're interested. And I can find out what the typical time frame is. My guess would be --

THE COURT: One of the things -- I'm sorry. One of the things that is sort of my pet peeve is cases that stay on administrative termination for a very long period of time without hearing anything.

So would a 90-day -- every 90 days a status letter, that would certainly be helpful to me.

MR. WHITMAN: Absolutely, Your Honor.

THE COURT: So that will be part of the order. If the parties can advise us what the plaintiff intends to do as to the Department of Labor, and if there is a filing with the Department of Labor, the status of it every 90 days so I can keep an eye on it and it doesn't sit on the inactive docket for a long time. And if there is a resolution of it, please advise me as well, so we can close out the matter. Okay?

Anything further for the plaintiff?

MS. HENRIS: No, Your Honor. Thank you.

THE COURT: Okay. Thank you.

Anything for the defendant?

MR. WHITMAN: No, Your Honor. Thank you.

THE COURT: All right. We're off the record.

(Proceedings concluded at 10:36 a.m.)

\- - - - - - - - - - - - - - - - - - - - - - -

**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

\- - - - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/S/ Ann Marie Mitchell*        *26th day of June, 2024*
*CCR-RDR-RMR-CRR*
*Court Reporter/Transcriber*